IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

NINO R. WALLACE                                                              PLAINTIFF

v.                              Civil No. 6:09-cv-6057

MARK BURNS *et al.*                                                       DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, proceeding *pro se*, has filed a pleading by using a form entitled "Form to be Used by Prisoners in Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983."[1] (Doc. 1). Plaintiff did not pay the full filing fee for this action, but instead filed a Motion for Leave to Proceed *in forma pauperis,* ("IFP"). (Doc. 2). The Motion for Leave to Proceed IFP was granted. (Doc. 3). The matter is presently before the Court for initial screening of Plaintiff's pleading prior to ordering service. For the reasons discussed below, this Court recommends that this action be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

    **I.**    **BACKGROUND**

The following facts were presented to the Court in Plaintiff's Complaint and Supplements to that Complaint. (Docs. 1, 5-8). Plaintiff alleges he had a party at his residence in Murfreesboro, Arkansas, during which he was in an altercation with his girlfriend. (Doc. 5 at 1). After the altercation, everyone left his house and Plaintiff went to sleep. *Id.* Plaintiff then awoke when two officers entered his home and were shaking his foot. *Id.* Plaintiff got dressed and left with a deputy

---

[1]At the time the complaint was filed, Plaintiff was an inmate at the East Arkansas Regional Unit of the Arkansas Department of Correction, at Brickeys, Arkansas. He has since be released from custody.

to go to the jail for questioning. *Id.* The next day, Plaintiff was told by neighbors that Mark Barns, the Chief of Police, and Randy Lamb, an officer, had entered Plaintiff's home while Plaintiff was at the jail. *Id.* at 2. Barns and Lamb are the named Defendants in this action. Plaintiff states his home was searched by the Defendants without a search warrant. *Id.* Plaintiff also states two baseball bats were taken from his home during the search, but not listed on any evidence log. (Doc. 6 at 2).

Plaintiff further alleges that Defendant Barns began a "personal v[endet]ta" against him. (Doc. 5 at 2). Plaintiff was allegedly approached by friends of his neighbors, and asked to sell them Xanex pills, which Plaintiff stated he did not sell. *Id.* Due to their persistence, Plaintiff gave each of the individuals ten pills. *Id.* One of the men persisted in having Plaintiff sell him some pills, and the next day this man came to Plaintiff's house. *Id.* at 3. The man asked Plaintiff if "it was okay to do what we talked about" and the Plaintiff directed his girlfriend to give the man the bottle of pills. *Id.* The man then left money on a table in Plaintiff's home. *Id.* Plaintiff indicates this incident, along with the altercation during the party at his home, resulted in him being incarcerated. (Doc. 5 at 3).

While in jail, Plaintiff states the tires on his car were slashed and there was a break-in at his house. *Id.* According to Plaintiff, Cassey Rouch, a first cousin to Defendant Lamb, and Dustin Dowdle, admitted to the break-in and implicated a third man named Kirk Wright. *Id.* Plaintiff indicates he inquired about his case with both Defendants, but received no clear response. *Id.* at 4. Plaintiff also states he was told by Kirk Wright, the third man implicated, that Defendant Lamb "ripped up" all statements made that implicated Lamb's cousin Cassey Rouch. *Id.*

Further, Kirk Wright's house was searched in relation to several burglaries in Plaintiff's neighborhood. (Doc. 7). When stolen items were found at Wright's residence, Wright implicated Dustin Dowdle, but Dowdle was never charged with any of the crimes. *Id.* Additionally, a full list

of the items recovered which belonged to Plaintiff were neither listed in a newspaper article referencing Wright's arrest, nor was Plaintiff informed the items had been found. *Id.*

Finally, Plaintiff states his cell was searched without his presence, including his legal work in this case, by Defendant Lamb. (Doc. 8). Plaintiff then states he was placed on lockdown with other inmates for "no reason." *Id.* Plaintiff alleges defamation of character, harassment, abuse of authority, neglect of duty, loss of business, illegal search, and racism. (Doc. 5 at 6).

## II.     APPLICABLE LAW

Because Plaintiff is proceeding *in forma pauperis*, his complaint is subject to the provisions of 28 U.S.C. § 1915(e). These provisions apply to all *in forma pauperis* litigants, whether they are incarcerated or not. *See Floyd v. United States Postal Serv.*, 105 F.3d 274, 275 (6th Cir. 1997) (holding that section 1915 applies to both prisoners and non-prisoners, despite the ambiguity of section 1915 (a)(1)). Section 1915(e)(2) provides the Court may dismiss a case "at any time" if the court determines that the Complaint fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, the complainant must allege facts, which if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while the defendant(s) acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: *the complaint must allege facts,* which if true, state a claim as a matter of law." *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir. 1980) (emphasis added); *see also, Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

Moreover, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County,* 954 F. Supp. 1392, 1397 (D. Minn. 1997). Thus, in order to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights.

### III.   DISCUSSION

In this case, the complaint fails to state a claim on which relief may be granted under the Constitution or laws of the United States. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff alleges defamation of character, harassment, abuse of authority, neglect of duty, loss of business, illegal search, and racism due to this arrest – none of which are cognizable claims in Section 1983 litigation. Moreover, the court's own review of the pleadings finds no cognizable Section 1983 claims. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Horsey v. Asher*, 741 F.2d 209, 211 n. 3 (8th Cir. 1984) (holding *pro se* pleadings are to be liberally construed).

Claims for slander and defamation are not cognizable under Section 1983. *Miner v. Brackney,* 719 F.2d 954, 955 (8th Cir. 1983); *Ellingburg v. Lucas,* 518 F.2d 1196, 1197 (8th Cir. 1975). "A plaintiff can successfully invoke § 1983 only when his federal statutory or constitutional rights have been violated. Invasion of an interest in reputation alone is insufficient to establish § 1983 liability because a damaged reputation, apart from injury to a more tangible interest such as loss of employment, does not implicate any 'liberty' or 'property' rights sufficient to invoke due process." *Geter v. Fortenberry,* 849 F.2d 1550, 1556 (5th Cir. 1988); *Paul v. Davis,* 424 U.S. 693 (1976).

In this case, Plaintiff has alleged "loss of business," but that is a mere conclusory allegation, and is not supported by the facts alleged by Plaintiff. In fact, Plaintiff stated he did not work at the

time in question. (Doc. 5 at 2). Thus, Plaintiff has failed to set forth what "business" was lost by the alleged defamation by Defendants.

Plaintiff's general allegation of "harassment," in light of his alleged facts, also fails to state a claim. Plaintiff has failed to set forth what conduct by Defendants was harassment. Plaintiff has not alleged any threats were made to him, or that he was physically abused. The court fails to find where "harassment," to the extent it would be a cognizable Section 1983 claim, has been alleged.

Similarly, Plaintiff states "abuse of authority" and "neglect of duty" as a causes of action, however the Court can find no precedent where "abuse of authority" or "neglect of duty" are cognizable claims in Section 1983 litigation. Moreover, the Court is unable to construe from Plaintiff's facts which actions are alleged to have occurred in abuse of the Defendants' authority or which duties Defendants are alleged to have neglected. Likewise, the general allegation of racism fails to set forth how these Defendants' alleged actions violated his constitutional rights or federal law, or how the actions involved or were fueled by racism.

Finally, Plaintiff has stated he was subject to an illegal search. Plaintiff does not indicate if he was convicted as a result of this search, or what, if anything, was found during the purported illegal search or how this evidence was ever used against him. At most, Plaintiff alleges two baseball bats with a combined value of approximately $570.00 were taken from his residence during the search.

Property claims are generally not actionable under section 1983 because if a state provides adequate remedies to compensate individuals for wrongful property loss, there is no absence of due process which would be actionable under 42 U.S.C. § 1983. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (intentional and negligent deprivations of property not actionable under section 1983 if suitable state remedy); *Parratt v. Taylor,* 451 U.S. 527 (1981). Plaintiff can bring a common-law

claim for conversion. *McQuillian v. Mercedes-Benz Credit Corp.,* 961 S.W.2d 729, 732 (Ark. 1998) (conversion is a common-law tort action for the wrongful possession or disposition of another's property); *see also Butler v. Smith*, 208 F.3d 217 (8th Cir.2000) (unpub. per curiam) (no § 1983 claim for deprivation of personal property because conversion action is an adequate post-deprivation remedy available in Arkansas).

The sum of Plaintiff's allegations are that the correct person or persons were not arrested for the break-in to his house, and that the incidents involving an altercation with his girlfriend and the exchange of Xanax pills should not have resulted in his incarceration. The Supreme Court has held that *habeas corpus* is the exclusive remedy for a state prisoner challenging the fact or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 488-90 (1973). The court does not find how these facts state a claim under Section 1983.

Plaintiff has also alleged his legal work was improperly reviewed by Defendant Lamb, and that he was placed on lockdown status with no explanation. (Doc. 8). Such claims could be cognizable in Section 1983 litigation, however in light of Plaintiff's facts, they are not in this case. In *Bounds v. Smith,* 430 U.S. 817, 825 (1977), the United States Supreme Court held that "the fundamental constitutional right of access to the court requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." This right of access was further defined by the court in *Lewis v. Casey,* 518 U.S. 343 (1996), where the court stated that an inmate alleging a denial of this constitutional right must show "actual injury." To state a valid Section 1983 claim due to interference with an inmate's legal papers, an inmate must allege that a defendant's deliberate and malicious interference actually impeded her access to the court or prejudiced an existing action. *Id.* at 349.

The Plaintiff has not alleged a factual basis for the "actual injury" required of a claim for denial of access to the courts under the Supreme Court's decision in *Lewis*. "*Lewis* explains and narrows the Supreme Court's earlier holding in *Bounds v. Smith,* 430 U.S. 817 (1977)." *Cody v. Weber,* 256 F.3d 764, 768 (8th Cir. 2001) (stating that with sufficient factual allegations of actual injury, "[t]he taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts.").

Plaintiff claims he was placed in lockdown, without being told the reasons for this status. Plaintiff has not described the alleged lockdown or what, if any, hardships he was subjected to as a result of this purported act. To state a claim under Section 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003). The Court "do[es] not consider the procedures used to confine the inmate in segregation." *Id.* (citing *Kennedy v. Bankenship,* 100 F.3d 640, 643 (8th Cir.1996)). Plaintiff has made no allegations of an atypical and significant hardship. As a result, plaintiff has failed to allege that defendants have infringed upon a constitutionally protected liberty interest, and his claims regarding his lockdown status will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV.   CONCLUSION

Accordingly, I recommend Plaintiff's Complaint (Doc. 1) be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as it fails to state a claim under Section 1983.

**The Plaintiff has fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Plaintiff is**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **7th day of May 2010.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE